[Civ. No. 10889. Second Appellate District, Division Two.—April 3, 1936.]

JOSEPH RICHARD COCKE et al., Plaintiffs and Appellants, v. K. IWANAGA et al., Respondents; GUY LEWIS et al., Cross-Defendants and Appellants.

Guy Lewis, *in pro. per.*, for Appellants.

Louis B. Stanton for Respondents.

CRAIL, P. J.—This is an appeal by the plaintiff and cross-defendants from a judgment in favor of the defendants. The action started as a suit to quiet title, but when it developed that the defendants had paid to plaintiff all or substantially all of the purchase price of the land it turned into one for an accounting and for specific performance.

The plaintiff and the defendant Iwanaga entered into a written contract on June 24, 1926, under the terms of which the plaintiff agreed to sell and Iwanaga agreed to buy 33 acres of land for $30,400, payable $8,000 in cash on execution of the agreement and thereafter at the rate of $3,000 per annum on May first of each year, the vendee to pay the annual taxes. The $8,000 was paid in hand. The plaintiff agreed to give a deed to the property together with a certificate of title upon full payment. Payments were made through the years.

However, it developed that on January 28, 1925, the plaintiff had made a contract to sell the same land to Masaki and there never has been a clearance of the Masaki agreement. At the date of the defendants' contract and prior thereto and for years thereafter, the 33 acres was a one-half part of a larger tract, the legal title to all of which was vested in the plaintiff's brother. Prior to the contract also this brother had procured a loan of $10,000 from the Federal Land Bank and had placed a mortgage on the entire tract to secure the

same. The loan is payable in semi-annual instalments of $150, including interest. This mortgage still remains a lien upon the entire tract including the 33 acres.

Because the legal title was vested in the plaintiff's brother, who disputed the plaintiff's claims, it was necessary for the plaintiff to bring an action against him for the determination and recovery of the plaintiff's title, and a judgment in favor of the plaintiff and against the brother was entered December 29, 1927. The judgment appointed a commissioner to execute a deed to plaintiff for his one-half of the lands, but execution of the deed was never obtained until October 28, 1932.

Other facts must be stated in this complicated situation. Prior to entering into the contract with defendants, plaintiff had executed two deeds to the cross-defendants, Lewis and Smith, for 2½ acres each. Each of these deeds has the singular characteristic of making a grant of an undivided 2½ acres in 36.999 which went to the plaintiff under the judgment and commissioner's deed. So far as we can find in the record, these 5 acres were not located upon any particular parcel of the plaintiff's land. The contract of sale between the plaintiff and the defendant, by its terms, excludes "a certain strip of land of five acres adjacent to that premises owned by" the brother. The defendants have paid the taxes upon the whole of the lands of plaintiff, including these 5 acres, since the contract was entered into. Furthermore, the plaintiff's brother had a prior lien on the plaintiff's portion of the land, and on June 11, 1929, brought an action to foreclose this lien. He obtained judgment and purchased the property at execution sale. Plaintiff was unable to pay the judgment or redeem from the sale and requested defendants to effect such redemption. The plaintiff agreed orally at this time that in case defendants should redeem the property the plaintiff would turn over to defendants the title to the property and in case any balance remained due the balance could subsequently be adjusted. Thereupon defendant Iwanaga borrowed the necessary money from the Yokohama Specie Bank, Ltd., and executed to that bank an assignment of the purchase contract, and the commissioner issued his certificate of redemption from the sale, but issued the same to the plaintiff. The next day, October 15, 1931, the parties hereto assembled and went over the accounts and the plaintiff signed a written statement acknowledging payment of all interest to

date and of $24,883.91 upon the principal of the contract price. The statement also contained the following: ''You may start title search upon the property and upon the completion of the same, we will take the matter up in regard to transferring title to the property to yourself and the matter of payment of the balance due to me under said contract. Of course, the charges of title search and for costs attached to the perfection of title will be paid by me as provided in said contract.'' Acting under this authorization, defendants ordered a title search, but it developed that the record title still remained in the plaintiff's brother. Thereupon conferences were held with the Cocke brothers in an effort to get a settlement. On January 28, 1932, the plaintiffs delivered to the defendants a written order to the brother to bring down title to defendant Iwanaga. However, difficulties arose between the two brothers and it became necessary to obtain the commissioner's deed, heretofore referred to. The commissioner's deed ran in favor of the plaintiff. The title, for the first time being in the plaintiff, he thereupon refused or, at least, failed to convey the title to the defendants. The defendants made all of the payments as required under the contract since the commencement of their contract, and also all of the semi-annual payments on the federal bank loan which were made, and also all of the taxes on the undivided one-half of the property, including those on the so-called ''floating'' 5 acres.

This was the situation on January 5, 1933, when the plaintiff served upon the defendants a notice and demand for a payment of $2,000 on the principal and $643.02 interest and other sums, and notified defendants that unless such sums were paid plaintiff would cancel the agreement of sale. On January 26, 1933, plaintiff served on defendants a notice of cancellation of contract, and plaintiff's action was filed on February 10, 1933.

As already stated, the case turned into a suit for an accounting and specific performance as the equities were all with the defendants. Crediting defendants with $5,000, which was only one-half of the original lien of the Federal Land Bank, as a part of the purchase price, the court found and held, after making an accounting, that plaintiff was overpaid by the defendants and gave judgment accordingly. It

is from this judgment that the plaintiff and cross-defendants appeal.

 It is the first contention of the plaintiff that the evidence does not support the findings with regard to several of the items of the account. It would serve no useful purpose to discuss in detail the evidence with regard to the accounting. We have viewed the evidence in the light most favorable to the parties which were successful in the trial court, which it is our duty to do when such contention is made. It is sufficient to say that there is substantial evidence to support the findings of the trial court.

 It is a further contention of the plaintiff that the court had no authority to credit the defendants on the purchase price with $5,000 with reference to the lien of the Federal Land Bank, for the reason that the sum of $2,250 had been paid on said mortgage, reducing the lien to that extent. The trial court found, however, and there was substantial evidence to sustain the finding, that these payments were all made by the defendants and were in addition to the sums which were accounted for and acknowledged in the written statement of October 15, 1931, and that the defendants were therefore entitled to a credit of the full $5,000.

 The plaintiff also contends that the judgment in this regard amounts in effect to creating a new contract between plaintiff and defendants. There is no merit in this contention. The action of the court was merely an adjustment of the payments on the purchase price in order to protect the vendee against the defects in the title. In a case where the facts were essentially similar our Supreme Court said in the case of *Smiddy* v. *Grafton,* 163 Cal. 16 [124 Pac. 433, Ann. Cas. 1913E, 921], that the vendee "has his election . . . either to insist upon a good title and refuse to exercise the option, if it is not offered, or to accept such title as the vendors have, and demand an adjustment of the payments, in such a manner as may be just, to protect him as far as may be against the defects in title. In such cases when the defect consists of a lien upon the land, the purchaser may compel the vendor to perform upon a tender of the amount due on the price, less a sum sufficient to discharge the liens."

There is no merit in any of the plaintiff's contentions. Courts are organized for the purpose of dispensing justice—not for the purpose of splitting hairs over intricate legal dis-

tinctions. The sad thing is that as yet the defendants have not received full and complete justice by the decree in this case. There is still a suit before defendants to quiet title against Masaki. There is still a lien upon the defendants' land—not for the $5,000 for which the defendants have been credited, but for $7,750. The plaintiff's financial condition is indicated by his inability to meet the brother's judgment and his appeal to the defendant to redeem the land. Defendants still face a lawsuit with the plaintiff's brother unless an adjustment can be reached with him. Plaintiff has raised additional points for the first time in appellants' reply brief, but we have not discussed them.

Judgment affirmed.

Wood, J., and Gould, J., *pro tem.*, concurred.